**SIGNED THIS: October 18, 2010**

_Mary P. Gorman_
_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re:                          )
                                )    In Bankruptcy
MATTHEW LEE HAUTER,             )
                                )    Case No. 10-70234
                Debtor.         )

## O P I N I O N

Before the Court is the Debtor's Second Amended Chapter 13
Plan and an Objection to Confirmation of the Second Amended Plan
filed by Consumer Portfolio Services, Inc. ("CPS").  CPS asserts
that it should be treated as a secured creditor in the Second
Amended Plan because of a lien it claims on a 2006 Hyundai Sonata
automobile owned by the Debtor.  Debtor has treated CPS as an
unsecured creditor because Debtor claims that the automobile was
stolen and that he no longer has possession or control over it.

-1-

For the reasons set forth herein, the Debtor's Second Amended Chapter 13 Plan will be confirmed over the objection of CPS.

## I. Factual and Procedural Background

Matthew Lee Hauter ("Debtor") filed his voluntary petition under Chapter 13 of the Bankruptcy Code on February 1, 2010. Debtor filed several plans and currently seeks confirmation of his Second Amended Plan.  The Second Amended Plan proposes payments to the Chapter 13 Trustee ("Trustee") of $245 per month for a period of 36 months.  All of the funds will be used to pay unsecured creditors and the Trustee's fees and commissions.

CPS has objected to each of the Debtor's plans and objects now to the Second Amended Plan.  CPS alleges - and it is undisputed - that it financed the Debtor's purchase of a 2006 Hyundai Sonata ("Sonata") in July 2007.  In exchange for providing the financing for the purchase, CPS received and perfected a lien on the Sonata. CPS asserts that it is entitled to be treated as a secured creditor in the Second Amended Plan and objects to its treatment therein as an unsecured creditor.

Debtor has provided an affidavit and testified at an evidentiary hearing regarding the Sonata.  Debtor states that, in May 2008, he was in East St. Louis, Illinois, and met a woman whose name he does not know.  He went with this woman to a house in East St. Louis which he quotes the East St. Louis police as describing

-2-

as a "known drug house."  At some point after going to the house, the Debtor loaned the woman the Sonata and, not surprisingly at least in hindsight, the woman never returned and he never saw the Sonata again.  Debtor says that he tried to report the theft of the Sonata to the East St. Louis police but, because he was at a known drug house and because, at least initially, he voluntarily allowed the woman to take the Sonata, the East St. Louis police refused to take a stolen vehicle report.  Debtor eventually made a stolen vehicle report regarding the Sonata to the Illinois State Police on July 18, 2008.

Debtor made payments to CPS in June and July 2008 but has made no further payments on the loan.  In August 2008, Debtor first told a representative of CPS that the vehicle was stolen.  CPS has made extensive efforts to find the Sonata or at least some evidence that it remains in the possession or control of the Debtor.  All of CPS's efforts in that regard have failed.  Nevertheless, CPS asks this Court to find that the Sonata was not stolen and that, accordingly, the Sonata remains available as its collateral and that it should be treated as a secured creditor in Debtor's Second Amended Plan.

Both parties have filed briefs in support of their respective positions.  An evidentiary hearing was held October 5, 2010.  The matter is ready for decision.

## II.   Jurisdiction

This Court has jurisdiction over the matters before it.   28
U.S.C. §1334.  This is a core proceeding.  28 U.S.C. §157(b)(2)(A)
and (L).

## III. Legal Analysis

CPS agrees with the Debtor that, if the Sonata was, in fact,
stolen and is no longer in the possession of or under the control
of the Debtor, then CPS should be treated as an unsecured creditor
in Debtor's Second Amended Plan.   Case law is clear that the
existence of collateral is necessary both to support the allowance
of a secured claim and for a creditor to be treated as a secured
creditor in a plan.  See, e.g., *In re Elliott*, 64 B.R. 429, 431
(Bankr. W.D. Mo. 1986); *In re Gabor*, 155 B.R. 391, 394 (Bankr. N.D.
W. Va. 1993); *In re E.P. Fournier Co., Inc.*, 225 B.R. 276, 277
(Bankr. D. R.I. 1998).  A claim is secured to the extent of the
value of a creditor's interest in the estate's interest in the
property that serves as collateral.  *See* 11 U.S.C. §506(a).[1]
Although the theft of secured property does not terminate the
secured creditors's interest in such property, the theft does

---

[1]   Because this case was filed more than 910 days after the
Sonata was purchased by the Debtor and financed by CPS, the so-
called "hanging paragraph" of §1325 does not apply and the
provisions of §506(a) do apply to the treatment of CPS's claim.  11
U.S.C. §1325.

result in a debtor's estate having no remaining interest in that stolen property.  If a debtor's estate has no interest in the secured creditor's collateral, there is no value to support the allowance of a secured claim.  See *Elliott*, 64 B.R. at 431; *Gabor*, 155 B.R. at 393.

CPS and the Debtor do not agree on who bears the burden of proof on the contested issues here.  Many courts have held that a debtor bears the burden of proof to establish by a preponderance of the evidence that all of the §1325(a) requirements for confirmation of a proposed plan have been met.  See, e.g., *In re Alexander*, 363 B.R. 917, 921-22 (10th Cir. BAP 2007); *In re Sullivan*, 326 B.R. 204, 211 (1st Cir. BAP 2005); *In re McNichols*, 254 B.R. 422, 427 (Bankr. N.D. Ill. 2000).  Cf. *In re Mendenhall*, 54 B.R. 44, 46 (Bankr. W.D. Ark. 1985).  Once a debtor has met that initial burden of proof, the burden shifts to the objecting party to establish that the proposed plan does not meet all of the statutory requirements.  See *In re Belt*, 106 B.R. 553, 564 (Bankr. N.D. Ind. 1989); *In re Thomas-Wesby*, 1990 WL 455311 at *2 (Bankr. S.D. Ga. Mar. 30, 1990).

Debtor bears the initial burden of proof and persuasion by a preponderance of the evidence to establish a *prima facie* case that the §1325(a) requirements for confirmation of his Second Amended Plan have been met.  11 U.S.C. §1325(a).  Once the Debtor meets that burden, CPS then bears the burden of proof and persuasion to establish that the requirements of confirmation in regard to the

treatment of CPS under the Second Amended Plan have not been met.

The Debtor's story is not a pretty one.  He admits to being out late one night in May 2008 in East St. Louis.  He admits to going to a known drug house with a woman he did not know and then allowing that woman to later leave the house with his Sonata.  He admits that he has not seen the vehicle since May 2008 and that he has not made a payment on his loan to CPS since July 2008.

The Debtor's story is, however, credible.  Debtor's current testimony regarding the circumstances of the theft of the Sonata is bolstered by the police report of the Illinois State Police which both the Debtor and CPS have attached to various documents filed in this case.  The police report taken in July 2008 contains a factual statement given to the Illinois State Police by the Debtor completely consistent with the testimony given by the Debtor in this case.  Debtor's testimony on direct examination at the October 5th hearing established a *prima facie* case that the Sonata was stolen in May 2008 and, therefore, the Debtor no longer has possession or control over the vehicle.

On cross-examination, CPS's attorney focused on the Debtor's failure to promptly notify CPS of the theft of the Sonata, the Debtor's failure to promptly report the theft to authorities, and the Debtor's tender of two payments to CPS after the theft.  When questioned about his tardy notification of CPS, Debtor explained that he had hoped to get the Sonata back but ultimately notified

CPS of the theft when he realized that was unlikely.  He also explained that the East St. Louis police refused to take a theft report from him and that it was only after some period of time that he was able to contact the Illinois State Police to make a report. He denied that he made the police report solely to defeat CPS's interest in the Sonata.  Finally, he explained that, when he made the two payments after the theft, he still hoped the Sonata would be recovered.  Once he realized that was not going to happen, he made no further payments.  Again, although the Debtor's answers were not pretty, they were credible and consistent.

CPS's attorney presented the Debtor with a document during cross-examination which he referred to as CPS's call log related to the collection of Debtor's account.  CPS's attorney then, without objection from Debtor's attorney, questioned the Debtor about the accuracy of CPS's entries on the call log during the period from May through August 2008.  The Debtor agreed that the call log correctly indicated that he had not told the CPS collectors that the Sonata was stolen during calls in June and July but had finally advised CPS of the theft in August 2008.  At the close of evidence, CPS's attorney moved for the admission of the call log into evidence.  Debtor's attorney affirmatively stated that she had no objection to the admission of the call log into evidence.  Thus, although the call log was never identified as a document that could be admitted without foundation under the Federal Rules of Evidence

and also was not used by CPS to either impeach or refresh the recollection of the Debtor, the call log was admitted into evidence.

During closing arguments, CPS's attorney urged the Court to review the call log in support of its claim that the Debtor's testimony was not credible. Accordingly, the Court did review the call log.[2] Unfortunately for CPS, however, several items appear in the call log which tend to undercut rather than support CPS's arguments.

First, the call log discloses that, on August 21, 2008, the Debtor left a voice mail with CPS stating that his Sonata had been stolen. In that voice mail, according to CPS's own records, the Debtor provided the name and badge number of the officer who had taken the stolen vehicle report and the file number of the report. The call log discloses that, approximately nine minutes after the voice mail was noted, a collector called and spoke with the Debtor directly. In that call, the Debtor stated that the Sonata had been stolen three months before. The call log shows no follow up from CPS to obtain a police report for many months but then, inexplicably, shows multiple calls to the Collinsville and

---

[2] Upon reviewing the call log, this Court immediately realized that the call log continues past the date of the filing of this case and includes detailed information regarding calls between CPS and its attorney. This Court has ignored those portions of the log in making its decision here. Counsel is admonished, however, that the call log should have been more thoroughly examined before it was offered into evidence.

Carlinville police departments asking for a police report on Debtor's Sonata despite the fact that there is nothing in the call log to indicate that the Debtor ever suggested the stolen vehicle report was made to either of those departments. This information undercuts the argument now being made that the Debtor did not give CPS the same information about the theft of the Sonata in 2008 that he is providing now and that he refused to cooperate in providing information about the stolen vehicle report.

Second, the call log discloses a huge volume of calls made by CPS collectors from August 2008 until this case was filed to not only the Debtor but also to persons identified in the call log as the Debtor's mother, father, cousin, grandparents, co-workers, and landlord. CPS also notes in the call log reports of investigators who attempted to track down the Debtor personally and, in the process, scoured the neighborhoods where they thought he lived for the Sonata. None of these efforts resulted in CPS finding any evidence that the Sonata had not been stolen or that it still might be in the Debtor's possession or control. To the contrary, the call log indicates that, on two occasions, the Debtor's father reported that he understood the vehicle had been stolen. On one occasion, a co-worker reported that the Debtor was driving a truck to work. CPS obviously devoted a significant amount of resources to finding the Sonata and came up totally empty-handed. CPS's argument that this Court should find that the Debtor still has

-9-

possession and control of the Sonata is severely undercut by CPS's inability after such an extensive effort to come up with even a hint of evidence to support its position.

Finally, the call log discloses that CPS periodically checked official records to determine the status of the title and registration of the Sonata. Because the Sonata was purchased and originally registered to the Debtor in Illinois in July 2007, the license plates on the Sonata would have expired in July 2008. CPS confirmed through Illinois official records that the license plates expired in July 2008 and were never renewed. CPS also confirmed through Carfax that no activity had occurred with respect to the title to the vehicle since the Debtor's July 2007 purchase. This information suggests that the vehicle was not driven - at least in Illinois - after July 2008.

CPS did not meet its burden to establish that the Debtor's testimony regarding the theft of the Sonata was not credible.


### IV. Conclusion

Debtor presented a *prima facie* case that the Sonata was stolen in May 2008. The evidence presented by CPS did nothing to establish that the Debtor was not credible and that this Court should find that the Sonata is still in the possession of or under the control of the Debtor. Accordingly, CPS is properly treated as an unsecured creditor in the Debtor's Second Amended Plan. The

-10-

Second Amended Plan will be confirmed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###